**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **REBECCA CASTILLO,** an individual, | ) | **Case No. 1:18-cv-01536** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Trial by Jury Demanded** |
| **HICKORY FARMS, LLC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF,**
**CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF**

Plaintiff, Rebecca Castillo ("Plaintiff"), by and through her attorneys, for her complaint against HICKORY FARMS, LLC. states as follows:

**INTRODUCTION**

1. Plaintiff is a blind and visually-impaired person who requires screen-reading software to read website content using her computer.

2. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

3. Plaintiff brings this civil rights action against Defendant HICKORY FARMS, LLC. ("Defendant") for its failure to design, construct, maintain, and operate its website, www.hickoryfarms.com (the "website" or "Defendant's website") to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

4. Defendant's denial of full and equal access to its website, and therefore denial of

its products and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

5.      Because Defendant's website, hickoryfarms.com, is not fully and equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's full website will become and remain accessible to blind and visually-impaired consumers, including Plaintiff.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

7.      This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's UCRA claims are so related to Plaintiff's federal ADA claims, they form part of the same case or controversy under Article III of the United States Constitution

8.      This Court has personal jurisdiction over Defendant because it is deemed a resident of the State of Illinois and it conducts and continues to conduct a substantial and significant amount of business in the State of Illinois.

9.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(1) because Defendant resides in this District and this Court has personal jurisdiction over Defendant.

## PARTIES

10.     Plaintiff, at all times relevant and as alleged herein, is a resident of California,

County of Los Angeles. Plaintiff is also blind, visually-impaired, handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

11.     Plaintiff is informed and believes, and thereon alleges, Defendant is an international retailer of food products, headquartered in Chicago, Illinois

12.     Defendant's stores provide to the public important goods and services. Defendant offers consumers an array of goods and services including: a wide variety of products that are made available for sale online and in-store; information about product sales, discounts, promotions, online customer account, special offers and news; as well as many other benefits related to these goods and services.

13.     Defendant's website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) because Defendant's website is, or is part of, a "sales or rental establishment," and a "service establishment."

14.     Defendant has been and is committing the acts or omissions alleged herein in Los Angeles County of the State of California which caused injury, and violated rights prescribed by the ADA and UCRA, to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in California. Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's website in Los Angeles County. The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's independent, full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website.

Case: 1:18-cv-01536 Document #: 1 Filed: 03/01/18 Page 4 of 18 PageID #:4


## THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET

15.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.  As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence. Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen. This technology is known as screen-reading software.  Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person may employ to fully and independently access the internet.

16.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them.  Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately.

17.     Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

18.     For blind and visually-impaired users of Apple operating system-enabled computers and devices, the screen-reading software available and built into all Apple products is VoiceOver.  Apple's devices, including the iPhone, have the VoiceOver program integrated into their iOS operating system for use by blind and visually-impaired users, including Plaintiff.

19.     For screen-reading software to function, the information on a website must be

capable of being rendered into meaningful text.  If the website content is not capable of being rendered into meaningful text, the blind or visually-impaired user is unable to access the same content available to sighted users using their keyboard because they are unable to see the screen or manipulate a mouse as a sighted person can.

20.    Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet, websites and other digital content.

21.    If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website or mobile app that is available to sighted users.

22.    There are well-established industry adopted guidelines for making websites accessible to visually-impaired people who require screen-reading software programs. These guidelines have existed for at least several years and are successfully followed by large business entities who want to ensure their websites are accessible to all persons. The Web Accessibility Initiative ("WAI"), an initiative of the World Wide Web Consortium developed guidelines on website accessibility. Through Section 508 of the Rehabilitation Act, the federal government also promulgated website accessibility standards. These guidelines, easily found on the Internet, recommend several basic components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible and by adding structured headings so blind and visually-impaired people can navigate websites just as sighted people do. Without these basic components, websites are inaccessible to a blind person using screen-reading software.

23.    Inaccessible or otherwise non-compliant websites pose significant access barriers

to blind and visually-impaired persons.

24.     Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

      a.     A text equivalent for every non-text element is not provided;

      b.     Title frames with text are not provided for identification and navigation;

      c.     Equivalent text is not provided when using scripts;

      d.     Forms with the same information and functionality as for sighted persons are not provided;

      e.     Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

      f.     Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

      g.     If the content enforces a time limit, the user is not able to extend, adjust or disable it;

      h.     Web pages do not have titles that describe the topic or purpose;

      i.     The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

      j.     One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

      k.     The default human language of each web page cannot be programmatically determined;

      l.     When a component receives focus, it may initiate a change in context;

      m.     Changing the setting of a user interface component may automatically

cause a change of context where the user has not been advised before using the component;

n.    Labels or instructions are not provided when content requires user input;

o.    In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.    Inaccessible Portable Document Format (PDFs); and,

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including screen-reading software.

## DEFENDANT'S FAILURE TO MAKE ITS WEBSITE ACCESSIBLE AND PLAINTIFF'S ATTEMPTS TO ACCESS

25.    Defendant offers the commercial website hickoryfarms.com to the public.

26.    The website has features that should allow all consumers to access the goods and services Defendant offers and should allow consumers to locate physical locations where Defendant's products may be purchased.

27.    The goods and services offered by Defendant's website include, but are not limited to the following: a wide variety of products that are made available for sale online and in-store; information about product sales, discounts, promotions, online customer account, special offers and news; and many other benefits related to the Defendant's goods and services.

28.    Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to

therefore specifically deny the goods and services that are offered therein and available at its stores.

29.     Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually-impaired persons have been and are still being denied equal access to the numerous goods, services, and benefits offered to the public through hickoryfarms.com.

30.     Plaintiff cannot use a computer without the assistance of screen-reading software.

31.     However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access the internet.

32.     Plaintiff has visited hickoryfarms.com on several separate occasions using the JAWS screen-reader.

33.     During several separate visits to Defendant's website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public on Defendant's website.

34.     Due to the widespread access barriers Plaintiff encountered on Defendant's website, Plaintiff has been deterred, on a regular basis, from accessing Defendant's website, which has prevented her from full and equal access of Defendant's goods and services.

35.     Similarly, the access barriers Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting or locating Defendant's brick-and-mortar stores to purchase products.

36.     While attempting to navigate hickoryfarms.com, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to:

      a.     A lack of alternative text ("alt-text"), or a text equivalent.  Alt-text is invisible code embedded beneath a graphic or image on a website.  For a website to be

accessible via a screen-reader, it requires that alt-text be coded with each graphic or image so that screen-reading software can speak the alt-text where a sighted user would see the pictures. Alt-text does not change the visual presentation, but instead a text box (which is invisible) appears to the screen-reading software program and vocalizes a description of the image when a screen-reader user has reached the image or graphic using the "tab," "up arrow" and/or "down arrow" keys. Plaintiff accessed Defendant's website in order to find Christmas gifts. Plaintiff encountered several images and graphics either without alt-text, with uninformative alt-text, or with alt-text that sounded like computer code. Plaintiff was unable to complete a purchase because she had no idea what she would be purchasing. When alt-text is missing on these graphics and images, it prevents screen-readers from accurately vocalizing a description of the graphics or images to the user. As a result, visually-impaired consumers are unable to determine what is on the website, browse, learn about and purchase products Defendant sells online and in its stores, or access Defendant's many other goods and services;

b.  Links that either cannot be activated by keyboard or that go nowhere. Several buttons on which Plaintiff hit "enter" did not work;

c.  Links with redundant and uninformative link text. There several links that share the same, generic link text. More descriptive and unique alt-text is needed so that Plaintiff, and other screen reader users, can immediately understand the purpose of the links;

d.  Cursor traps, which significantly hinder navigation because they prevent the

screen reader from moving forward and screen reader users, like Plaintiff, must instead go back and attempt to navigate around the trap.

37.     Verbalization of code or unintelligible content. When Plaintiff attempted to learn more Hickory Farms combo boxes and picnic baskets, she encountered graphics with no verbal description.

38.     In November, 2017, Plaintiff attempted to do business with Defendant on hickoryfarms.com and Plaintiff encountered barriers to access the website.  Plaintiff visited the website twice more to try to do business with Defendant and found that the barriers still existed. Due to the unlabeled buttons, lack of alt text, the structure of the headings, and other barriers, Plaintiff was unable to fully and independently browse or complete a transaction on the website.

39.     Despite past and recent attempts to do business with Defendant on its website, the numerous access barriers contained on the website and encountered by Plaintiff, have denied Plaintiff full and equal access.

40.     Plaintiff, as a result of the barriers on Defendant's website, continues to be deterred on a regular basis from accessing Defendant's website.

41.     Due to the inaccessibility of hickoryfarms.com, blind and visually-impaired consumers, such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendant offers to the public on its website.

42.     The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website.

43.     In addition, the access barriers Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting Defendant's physical stores.

44.     If hickoryfarms.com was equally accessible to all, Plaintiff could independently navigate Defendant's website and complete a desired transaction as sighted individuals do.

45.     Having made many attempts to use Defendant's website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

46.     There are readily available, well established guidelines, available to Defendant on the Internet, for designing, constructing and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. In addition, incorporating these basic changes and adding certain elements to make Defendant's website accessible would not fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant. Because maintaining and providing a website where all functions can be performed using a keyboard would provide full, independent and equal accessible to all consumers to the website, Plaintiff allege that Defendant has engaged in acts of intentional discrimination including, but not limited to the following policies or practices:

    a.     Construction and maintenance of a website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b.     Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c.     Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

47.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

48.     The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

> "In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . ."
> (42 U.S.C. § 12188(a)(2).)

49.     Because Defendant's website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its websites to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to comply with the ADA to make the website accessible.

50.     Plaintiff seeks that this permanent injunction require Defendant to cooperate with the Agreed Upon Consultant to:

a. Train Defendant's employees and agents who develop the hickoryfarms.com website on accessibility and compliance with the ADA;

b. Regularly check the accessibility of Defendant's website to maintain accessibility as required by the ADA;

c. Regularly test end-user accessibility of the websites by screen-reader users to ensure Defendant's website is accessible to blind and visually-impaired individuals who would access the website with screen-reading technology; and,

d. Develop an accessibility policy that is clearly disclosed on its website,

with contact information for users to report accessibility-related problems and be provided with meaningful resolution after Defendant has investigated and identified the accessibility-related problem.

51.     If hickoryfarms.com were accessible to screen-reader users, Plaintiff and similarly situated blind and visually-impaired people could independently find store locations; learn about sales, offers and discounts (both in-store and online); browse merchandise selection and find product information and availability; make purchases and returns; check the status of an order and track delivery of purchases; create and access a customer account for a faster check out process and to access exclusive offers and news; and access the many other benefits related to these goods and services.

52.     Although Defendant may currently have centralized policies regarding the maintenance and operation of its website, Defendant lacks a plan and policy reasonably calculated to make its website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

53.     Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Defendant's website, in violation of their rights.

## COUNT I

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

54.     Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

55.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

(42 U.S.C. § 12182(a).)

56.     The ADA requires that the place of public accommodation not discriminate in any way in which it interacts with the public, whether by selling products at a physical location or over a virtual location on the Internet.[1]

57.     Defendant's website, hickoryfarms.com, is therefore a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181.

58.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.  (42 U.S.C. § 12182(b)(1)(A)(i).)

59.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.  (42 U.S.C. § 12182(b)(1)(A)(ii).)

60.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

"[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges,

---

[1] Chief Judge Richard Posner of the Seventh Circuit Court of Appeals stated in dicta that the core meaning of the ADA's definition of discrimination is that the owner or operator of a facility, "whether in physical space or in electronic space" that is open to the public, cannot exclude disabled persons from entering the facility and using it in the same manner as do nondisabled persons.  (*Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (citing *Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Assoc. of New England*, 37 F.3d 12, 19 (1st Cir. 1994)).

advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

61.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

62.     Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

63.     Furthermore, Plaintiff has been denied full and equal access to hickoryfarms.com, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

64.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

65.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against Defendant as follows: a) A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its website is fully and equally accessible to, and

independently usable by, blind and visually-impaired individuals; b) A preliminary and permanent injunction enjoining Defendant from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to its website, hickoryfarms.com; c) A preliminary and permanent injunction requiring Defendant to take the steps necessary to make hickoryfarms.com readily accessible to and usable by blind and visually-impaired individuals; d) For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1); e) For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendant's discrimination; f) For prejudgment interest to the extent permitted by law; g) For costs of suit; and g) For such other and further relief as this Court deems just and proper.

## COUNT II

## VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.*

66.     Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this third cause of action as though fully set forth herein.

67.     California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendant is systematically violating the UCRA, Civil Code § 51 *et seq.*

68.     Defendant's stores are "business establishments" within the meaning of the Civil Code § 51 *et seq.*  Defendant generates revenue from the sale of goods and services through its website, hickoryfarms.com.  Defendant's website is a service provided by Defendant that is

inaccessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Defendant is violating the UCRA, Civil Code § 51 *et seq.*, by denying visually-impaired customers the goods and services provided on its website. These violations are ongoing.

69.     Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendant has constructed a website that is inaccessible to Plaintiff, Defendant maintains the website in an inaccessible format, and Defendant has failed to take actions to correct these barriers.

70.     Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above. Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

71.     The actions of Defendant violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

72.     Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

73.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against Defendant, as follows: a) A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of the UCRA, Civil Code § 51 *et seq.*, for Defendant's failure to take action that was reasonably calculated to ensure that its websites are fully and equally accessible to, and independently usable by, blind and visually-impaired individuals; b) A

preliminary and permanent injunction enjoining Defendant from further violations of the of the

UCRA, Civil Code § 51 *et seq.*, with respect to its website, hickoryfarms.com; c) A preliminary

and permanent injunction requiring Defendant to take the steps necessary to make

hickoryfarms.com readily accessible to and usable by blind and visually-impaired individuals; d)

For attorneys' fees and expenses pursuant to all applicable laws including, without limitation,

pursuant to of the UCRA, Civil Code § 51 *et seq.*; e) For compensatory damages including, but

not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the

Plaintiff as a result of Defendant's discrimination; f) For prejudgment interest to the extent

permitted by law; g) For costs of suit; and h) For such other and further relief as this Court

deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.


Dated: March 1, 2018                                        *Respectfully submitted,*

                                                            */s/ Rusty A. Payton*
                                                            Rusty A. Payton
                                                            Marc E. Dann
                                                            PaytonDann
                                                            20 North Clark Street, Suite 3300
                                                            Chicago, Illinois 60602
                                                            (312) 702-1000
                                                            (312) 702-1000 (fax)
                                                            payton@dannlaw.com
                                                            mdann@dannlaw.com
                                                            Disabilitynotices@dannlaw.com
                                                            *Counsel of Record for Plaintiff*