THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REBECCA CASTILLO,**<br><br>      **Plaintiff,**<br> v.<br><br>**HICKORY FARMS, LLC,**<br><br>      **Defendant.** | **Case No. 1:18-cv-01536**<br><br>**Honorable John Z. Lee** |

**DEFENDANT HICKORY FARMS, LLC'S COMBINED MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND MEMORANDUM OF LAW IN SUPPORT**

    Defendant, Hickory Farms, LLC ("Hickory Farms"), by and through its undersigned attorneys, hereby moves to dismiss the complaint (the "Complaint") filed by plaintiff, Rebecca Castillo ("Plaintiff"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). In support thereof, Hickory Farms states as follows.

**INTRODUCTION**

    Plaintiff brings this action pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.* (the "ADA" or "Title III") to cause Hickory Farms to redevelop its website to make it more accessible for blind and visually-impaired individuals. The Complaint should be dismissed because the request for injunctive relief is moot. Hickory Farms is currently implementing relief identical to that sought in the Complaint pursuant to a consent decree entered in an earlier-filed action styled *Gniewkowski et al. v. Hickory Farms, LLC*, No. 17-cv-417 (W.D. Pa.) ("*Gniewkowski*"). Further, there is no realistic possibility that Hickory Farms will undo the changes it is implementing. Because the Court cannot award Plaintiff any meaningful injunctive relief, the Court should also decline to exercise supplemental jurisdiction over Plaintiff's California state law damages claim and dismiss the entire Complaint with prejudice.

## FACTUAL BACKGROUND

A. Hickory Farms

For over 65 years, Hickory Farms has offered unique food gifts and gourmet gift baskets, helping families celebrate and share holiday traditions. (Affidavit of Judy Ransford, attached as Exhibit A ¶ 3). Hickory Farms gift baskets and food gifts are available year-round online. (*Id*.) Around Thanksgiving and Christmas each year, Hickory Farms establishes kiosks in malls and in other similar venues. (*Id*.)

B. Factual Allegations

The Complaint alleges Plaintiff, a visually-impaired individual, does not have full access to the Hickory Farms website because screen reading software cannot convert elements of the website into text-to-speech audio. (Complaint, ¶¶ 36a, 37). The Complaint further alleges the website is not easily navigable to a blind or visually impaired individual because it contains cursor traps and hyperlinks that cannot be activated by keyboard or have redundant or uninformative link text. (*Id*., ¶ 36b-d). Plaintiff claims these alleged deficiencies violate Title III of the ADA and the California Unruh Civil Rights Act. (*Id*., ¶ 4). Plaintiff seeks "a permanent injunction to cause a change in Defendant's corporate policies, practices and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers, including Plaintiff." (*Id*., ¶ 5). Plaintiff further "seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to comply with the ADA and make the website accessible" and damages under the Unruh Act (*Id*., ¶¶ 49, 72). Plaintiff claims well-established industry guidelines, including Web

Content Accessibility Guidelines (WCAG),[1] identify the components necessary to create a website that is accessible to blind and visually-impaired individuals in accordance with the ADA. (*Id.*, ¶ 22).

### C. The Consent Decree

Before this action was filed, a nearly identical lawsuit – *Gniewkowski* – was filed in the Western District of Pennsylvania by individual plaintiffs and ADA advocacy organization Access Now, Inc. Through the court's alternative dispute resolution program, the parties developed terms of a consent decree that was reviewed and approved by the court, and entered as a federal court order (the "Consent Decree"). Pursuant to the Consent Decree, Hickory Farms has complied, and will continue to comply, with the following obligations:

- Defendant shall engage an experienced accessibility consultant to assess the Website and to provide Defendant with specific recommendations to facilitate website accessibility and conformance with Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0 AA").

- Defendant shall ensure full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through its Website according to the following timeline and requirements provided that the following dates will be extended in the instance that the Department of Justice releases regulations for websites under Title III of the ADA while this Consent Decree is in effect and which contain compliance dates and/or deadlines further in the future. No later than 27 months after the Effective Date of this Consent Decree, Defendant shall make reasonable efforts to comply with the recommendations of its consultant to ensure that the Website is accessible to individuals with Visual Impairments, including conformity with WCAG 2.0 AA or the applicable standard adopted by the Department of Justice.

---

[1] Plaintiff alludes to federal guidelines that are "easily found on the Internet." (Complaint, ¶ 22). Those guidelines, available at https://www.justice.gov/jmd/page/file/1018261/download, state that the standards for federal government websites incorporate the Web Content Accessibility Guidelines (WCAG) regarding the development, procurement, maintenance and use of web-based intranet and internet applications.

- In the event Plaintiffs allege that Defendant failed to meet its obligations pursuant to paragraphs 13 or 14 of the Consent Decree or Defendant alleges that there is an element of WCAG 2.0 AA with which it cannot substantially comply, the party making such claim will notify the other party in writing with reasonable detail of the condition at issue. Within 30 days of receipt of written notice, the party receiving notice will provide a written response. The parties will make a good faith effort to resolve the dispute informally. If the issue remains unresolved 60 days after the notice is given, the parties will mutually select an independent accessibility consultant with experience in accessible website design to evaluate whether a breach of the Consent Decree has occurred as defined in Paragraph 21 herein.

- There will be no breach of this Consent Decree unless (a) the independent accessibility consultant determines that the Website is not accessible by a person with a Visual Impairment who has average screen reader competency using a prominent commercially available screen reader including but not limited to Jaws, Voiceover, or NVDA in combination with one of the following browsers (in versions of which are currently supported by their publishers): Internet Explorer, Firefox, Safari and Chrome; and (b) Defendant fails to remedy the issue within a reasonable period of time of not more than sixty (60) days after receiving the independent accessibility consultant's opinion. If the independent accessibility consultant estimates it will take longer than sixty days to make the necessary changes, the amount of time estimated by the independent accessibility consultant will control. If the independent accessibility consultant finds that the inability to use a screen reader cannot be remedied using reasonable efforts, Defendants shall not be obligated to remedy the item.

(Consent Decree, ¶¶ 13-14, 20-21, copy attached as Exhibit B).

Redeveloping the Hickory Farms website in conformance with WCAG 2.0 AA is a top priority for Hickory Farms in 2018. (Ransford Affidavit, ¶ 5). Since the Consent Decree was entered in August 2017, Hickory Farms has undertaken substantial steps to address website accessibility issues. It researched, interviewed and selected an independent consultant, Accessible360. (*Id*., ¶ 6). It held a workshop with the Hickory Farms Web Operations team and outside web development firm Lyons GC (collectively, the "Web Development Team") to discuss priorities and strategies for 2018, including scheduling the implementation of the website accessibility initiative. (*Id*., ¶ 7). It retained Accessible360 to audit its website to identify accessibility issues and prepare a report concerning its findings and recommendations. (*Id*., ¶ 9).

4

It further engaged Accessible360 to support and train the Web Development Team while it undertakes the recommended modifications for the website. (*Id*., ¶ 10). Finally, Hickory Farms engaged Accessible360 to conduct a comprehensive reassessment of the Hickory Farms website to ensure it conforms with WCAG 2.0 AA. (*Id*., ¶ 11). All auditing, modifications, training, testing, trouble-shooting and compliance reassessments will be complete no later than October 2018, when Hickory Farms implements an annual code freeze. (*Id*., ¶ 8).

The Consent Decree is as an enforceable injunction, which may be enforced by the plaintiffs in *Gniewkowski*. *See* Fed. R. Civ. P. 65. Pursuant to Rule 71, a non-party for whose benefit the Consent Decree was entered may also move to enforce the Consent Decree. Fed. R. Civ. Pro. 71.

## STANDARD

Hickory Farms seeks dismissal under Rule 12(b)(1) on the grounds that Plaintiff's claims for injunctive and declaratory relief are moot. In determining whether to dismiss a claim on mootness grounds, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008). Such "[c]onsideration of evidence outside of the pleadings will not convert the motion attacking federal jurisdiction into one for summary judgment." *McLachlan v. Astrue*, 703 F. Supp. 2d 791, 795 (N.D. Ill. 2010), citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

## ARGUMENT

I. **The Court Should Dismiss The ADA Claim Pursuant To Rule 12(b)(1).**

Plaintiff seeks an order pursuant to Section 12188(a)(2) of the ADA requiring Hickory Farms to develop an accessibility policy and retain an independent consultant to advise Hickory Farms on changing its website to comply with WCAG criteria and audit continued compliance.

5

(Complaint, ¶¶ 48-49).[2] Plaintiff's claim for injunctive relief is moot because Hickory Farms has already taken significant steps to implement the relief that Plaintiff seeks. Further, there is no realistic possibility that Hickory Farms will undo the changes it is undertaking. Finally, prudential limitations confirm Plaintiff's lack of standing in this case.

### A. The Claim of Injunctive Relief Is Moot.

"A case becomes moot, and the federal courts lose subject matter jurisdiction, when a justiciable controversy ceases to exist between the parties." *Aslin v. Fin. Indus. Regulatory Auth., Inc.*, 704 F.3d 475, 477 (7th Cir. 2013). If a court is unable to award meaningful relief, the case is moot. *Id*. "This is often so where a plaintiff seeks only injunctive or declaratory relief and the defendant discontinues the conduct in dispute." *Id*. at 477-78. "Ensuring that standing requirements are met by each plaintiff in each lawsuit brought under the ADA enables courts to ensure that the ADA is not being abused." *Access 4 All, Inc. v. Thirty E. 30th St., LLC*, No. 04 Civ. 3683, 2006 U.S. Dist. LEXIS 96742, at *35 (S.D.N.Y. Dec. 11, 2006); *Access 4 All, Inc. v. Chicago Grande, Inc.,* No. 06 C 5250, 2007 WL 1438167, at *4 (N.D. Ill. May 10, 2007) ("[E]ven if Plaintiffs have been injured within the meaning of Title III of the ADA, they must also show that their injuries satisfy the standing requirements of Article III of the Constitution to establish subject matter jurisdiction.").

---

[2] The additional injunctive and declaratory relief requested, namely, an order mandating that Hickory Farms "comply with the law" does not satisfy Rule 65(d)(1) and should be disregarded as an "empty injunction." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."); *cf. Access Now, Inc. v. Blue Apron, LLC*, No. 17-CV-116-JL, 2017 WL 5186354, at *2 (D.N.H. Nov. 8, 2017) (explaining in an ADA website accessibility case that a request for an injunction to "comply with the law" does not satisfy the mandate of Rule 65(d)(1) but a request for an injunction pursuant to Section 12188(a)(2) to retain a consultant and compel compliance with WCAG criteria is not a prohibited "general injunction.").

The requested injunctive relief is moot because Hickory Farms is already obligated by the Consent Decree to do exactly what Plaintiff seeks here. First, it must engage an independent consultant to assess the Hickory Farms website and provide specific recommendations to facilitate conformance with WCAG 2.0 AA. (Consent Decree, ¶ 13). Hickory Farms has already engaged Accessible360 to audit the website and provide a detailed list of recommendations in accordance with WCAG 2.0 AA. (Ransford Affidavit, ¶ 9). Second, Hickory Farms must make reasonable efforts to implement the recommended changes. (Consent Decree, ¶ 14). This, too, is already underway; the engagement with Accessible360 includes training the Web Development Team and providing support to Hickory Farms throughout the redevelopment process. (Ransford Affidavit, ¶ 10). Third, after the changes are complete, Hickory Farms must monitor whether the website is, and continues to be, accessible by a person with a visual impairment who has average screen reader competency using commonly available software and browsers. (Consent Decree, ¶¶ 14, 20-21). Hickory Farms' engagement with Accessible360 includes a compliance reassessment after the website modifications are complete. (Ransford Affidavit, ¶ 11). Any further pursuit of an injunction would not provide Plaintiff any effectual relief, as nothing more than what is already required by the Consent Decree can be reasonably accomplished.

Plaintiff may contend her claim is not moot because when she visited the Hickory Farms website in November 2017, she encountered barriers to access, and she will continue to encounter issues until the modifications are complete. This argument is without merit. As an initial matter, notwithstanding the 27-month time frame set forth in the Consent Decree, Hickory Farms has already taken significant steps to conform its website to WCAG 2.0 AA, and has every expectation that it will complete the modifications, auditing, testing, training and compliance reassessment no later than October 2018. (Ransford Affidavit, ¶ 8).

Further, Plaintiff does not – and cannot – seek the immediate renovation of the Hickory Farms website. As Plaintiff recognizes, in order to ensure the modifications to the website achieve the intended result, a detailed review and analysis of the accessibility challenges must be performed by a consultant who will audit, test and reassess the website. (Complaint, ¶¶ 49-50). Indeed, none of the relief Plaintiff requests will cause the Hickory Farms website to immediately comply with WCAG 2.0 AA.

Because of the complex nature of the requested relief, an order requiring immediate compliance with WCAG 2.0 AA would be patently unreasonable under "traditional equitable principles." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 529–30 (5th Cir. 2008) (prior consent decree establishing a plan for compliance mooted the present case where immediate cessation of the disputed conduct was not a practical solution). Following this principle, several courts outside this jurisdiction have dismissed as moot cases identical to this one. *See Haynes v. Hooters of America, LLC*, 2017 WL 2579044 (S.D. Fla. June 14, 2017) (referred to herein as "*Hooters*"); *Haynes v. Panda Express, Inc.*, 2018 WL 538698 (S.D. Fla. Jan. 24, 2018) (referred to herein as "*Panda Express*"); *Haynes v. Brinker Int'l, Inc.*, 2017 WL 4347204 (S.D. Fla. Sept. 29, 2017) (referred to herein as "*Brinker*").[3]

In *Hooters, Panda Express* and *Brinker*, the defendant had previously settled similar lawsuits in which it agreed to implement relief identical to that sought in the second action. Because website accessibility issues are complex and take time to resolve, *Hooters, Panda Express* and *Brinker* hold that a binding and enforceable agreement committing a defendant to

---

[3] Each of these cases has been appealed to the Eleventh Circuit. Oral argument in *Hooters* was held on April 11, 2018. A recording of the oral argument is available at http://www.ca11.uscourts.gov/oral-argument-recordings?page=1 (last accessed on April 17, 2018).

8

attain website accessibility on a set schedule moots a request for the same relief, even if those compliance efforts remain ongoing when the second action is filed.

Further, unlike *Hooters* and *Panda Express*, where remediation of the website was required only by a private agreement, here, the relief is embodied in a court-supervised Consent Decree. *Hooters*, 2017 WL 2579044 at *1, *Panda Express*, 2018 WL 538698 at *3. That the Consent Decree "is subject to judicial enforcement further evinces that there is no live controversy warranting this Court's intervention." *Brinker*, 2017 WL 4347204, at *4.

Additionally, even if the Court dismisses the Complaint as moot, Plaintiff is not without legal rights. Pursuant to Rule 71, Plaintiff may move to enforce the Consent Decree if she believes Hickory Farms is not complying with its obligations thereunder. *See Franz v. Vill. of Melrose Park, Ill.*, No. 92 C 1588, 1992 WL 198931, at *3 (N.D. Ill. Aug. 12, 1992). The binding obligations of the Consent Decree, which Plaintiff may move to enforce, moot the injunctive relief requested in the Complaint.

### B. There Is No Likelihood That Hickory Farms Will Undo the Changes Required By The Consent Decree.

Voluntary compliance moots a case where "the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 727 (2013). If a course of conduct "could not be resumed in this or any subsequent action" it is entirely speculative that a claim will arise in the future. *Id.*, citing *Deakings v. Monaghan*, 484 U.S. 193 (1998). Particularly where a defendant "ceased the challenged conduct for reasons unrelated to the litigation" it is easier to show the challenged conduct is unlikely to reoccur. *Equal Employment Opportunity Comm'n v. Flambeau, Inc.,* 846 F.3d 941, 949–51 (7th Cir. 2017), quoting *Aref v. Lynch*, 833 F.3d 242, 251 n.6 (D.C. Cir. 2016). Indeed, a case becomes "inarguably moot" where the cessation of conduct is "less voluntary" due to a "binding,

judicially enforceable agreement." *In re Residential Capital, LLC*, No. 11 CIV. 5201 DLC, 2013 WL 1285430, at *3 (S.D.N.Y. Mar. 29, 2013), quoting *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.,* 925 F.2d 556, 563 (2d Cir.1991).

The Consent Decree makes it absolutely clear that the conduct challenged in the Complaint – the continued maintenance of a website that does not comply with the WCAG 2.0 AA – cannot be reasonably expected to reoccur. In order to implement the Consent Decree, Hickory Farms has spent significant funds to retain Accessible360 and will continue to devote substantial resources to ensure the website complies with WCAG 2.0 AA. These undertakings are expensive, complex and required by separate court order, making it unlikely that Hickory Farms will undo them simply because the Complaint is dismissed. *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1023 (7th Cir. 2016) (finding plaintiffs' claim was moot where defendant provided the structural changes plaintiffs requested, and it would be difficult for defendant to undo those changes). Moreover, it makes good business and financial sense to modify the website to make it more accessible to more people, creating even less likelihood the disputed conduct will reoccur. *Flambeau*, 846 F.3d at 949–51 (finding plaintiff's claim was moot where defendant abandoned wellness program prior to initiation of the lawsuit because its costs outweighed its benefits.)

It is entirely speculative that Hickory Farms would undo the significant work already undertaken and the continuing work it is obligated to perform under the Consent Decree. Therefore, the substantial steps taken to redevelop the Hickory Farms website in compliance with the Consent Decree moot the identical relief requested in the Complaint.

### C. Prudential Considerations Also Confirm Plaintiff Lacks Standing.

The Complaint should also be dismissed in consideration of prudential limitations on standing. "[I]n close cases, mootness can be in part a prudential doctrine." *Flambeau*, 846 F.3d at 949–51. "One of these limitations is that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 689 (7th Cir. 2015).

Another prudential consideration is whether interpretive guidelines are available to assist with questions of statutory interpretation. *Flambeau*, 846 F.3d at 949–51 (declining on mootness and prudential grounds to consider whether an employer's since-abandoned wellness program violated the ADA where many questions were addressed through intervening DOJ guidelines). Presently, there are no federal guidelines addressing accessibility for websites operated by private companies. *See Robles v. Dominos Pizza LLC*, No. CV1606599SJOSPX, 2017 WL 1330216, at *8 (C.D. Cal. Mar. 20, 2017) (declining to exercise jurisdiction over website accessibility case under the primary jurisdiction doctrine because "the issue of web accessibility obligations [] require both expertise and uniformity in administration, as demonstrated by the DOJ's multi-year campaign to issue a final rule on this subject.") Particularly where, as here, federal guidelines may help resolve the disputed issues in a case, the litigant's personal stake in the outcome of the lawsuit throughout its duration is diminished. *Flambeau,* 846 F.3d at 950-51.

A plaintiff's status as a serial litigant is also a relevant prudential consideration that can undermine her intent to return to an allegedly inaccessible location. *See Access 4 All, Inc. v. Chicago Grande, Inc.*, No. 06 C 5250, 2007 WL 1438167, at *5-7 (N.D. Ill. May 10, 2007). A search of PACER records shows that since February 2017, Plaintiff has filed at least 30 actions

under Title III claiming accessibilities issues with each defendant's website. (*See* Results of PACER Search, attached as Exhibit C). Further, the Complaint contains scarcely any allegations concerning the particular products that Hickory Farms offers, or Plaintiff's purported intent to visit the Hickory Farms website in the future. These prudential considerations diminish Plaintiff's personal stake in the outcome of the litigation, supporting the conclusion that Plaintiff lacks standing to sue for injunctive relief under Title III of the ADA.

### II. The Court Should Decline To Exercise Supplemental Jurisdiction Over the California State Law Claim.

In addition to her federal claim, Plaintiff claims Hickory Farms violated the California Unruh Civil Rights Act. (Complaint, Count II). Because Plaintiff's claim for equitable relief is moot, there is no original subject matter jurisdiction in this Court, and the Court should decline to exercise supplemental jurisdiction over the California state law claim.

It is well recognized that money damages "are not available to private parties under Title III." *Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006). Thus, a private plaintiff suing under Title III of the ADA can only obtain injunctive relief. *See* 42 U.S.C. § 12188(a) (providing that the remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a–3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964); *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402 (1968) (noting that Title II allows for injunctive relief only). Because Plaintiff's claim for injunctive relief is moot, all that remains is Plaintiff's state law claim for damages under the California Unruh Civil Rights Act.

"Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) (internal

quotations omitted). Courts have recognized three exceptions to this rule: "(1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Id*. None of these exceptions apply here. The one-year statute of limitations has not run on Plaintiff's claim for damages under the Unruh Act. Cal. Code Civ. Proc., § 340. Further, no judicial resources have been committed in this case, and should not be committed considering the resources already dedicated by the District Court for the Western District of Pennsylvania. Finally, given this Court does not sit in the state where the state law claim arises, there is no clarity regarding how the claim should be decided. The Court should therefore decline to exercise supplemental jurisdiction over the Unruh Act claim.

## CONCLUSION

For the reasons stated above, the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(1).

Dated: April 26, 2018

Respectfully submitted,

**HICKORY FARMS, LLC**

s/Rachel L. Schaller
*Counsel for Defendant*

Heather A. Jackson (ARDC No. 6243164)
Rachel L. Schaller (ARDC No. 6306921)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Telephone:  (312) 527-4000
Email: hjackson@taftlaw.com
          rschaller@taftlaw.com

22320620.4