**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **REBECCA CASTILLO,**<br><br>     **Plaintiff,**<br> **v.**<br><br>**HICKORY FARMS, LLC,**<br><br>     **Defendant.** | **Case No. 1:18-cv-01536**<br><br>**Honorable John Z. Lee** |

## <u>Exhibit List</u>

| Exhibit | Description |
|---------|-------------|
| A | Affidavit of Judy Ransford |
| A-1 | Excerpt of Web Development Workshop Presentation |
| A-2 | Accessible360 Engagement Agreement |
| B | *Gniewkowski* Consent Decree |
| C | PACER Search for Rebecca Castillo |

# Exhibit A

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **REBECCA CASTILLO, an Individual,** | |
| **Plaintiffs,** | **Case No. 1:18-cv-01536** |
| **vs.** | |
| **HICKORY FARMS, LLC,** | **Honorable John Z. Lee** |
| **Defendant.** | |

<u>**AFFIDAVIT OF JUDY RANSFORD**</u>

I, Judy Ransford, being first duly sworn, do hereby state as follows:

1.     I am over eighteen (18) years of age and have personal knowledge of the contents of this Affidavit.

2.     At all times relevant, I was the Chief Marketing Officer for Hickory Farms, LLC ("Hickory Farms" or the "Company").

3.     For over 65 years, Hickory Farms has offered unique food gifts and gourmet gift baskets, helping families celebrate and share holiday traditions. Hickory Farms gift baskets and food gifts are available year-round online. Around Thanksgiving and Christmas each year, Hickory Farms establishes kiosks in malls and in other similar venues.

4.     In my capacity as Chief Marketing Officer for Hickory Farms, I am responsible for determining the marketing priorities for the Company each year, including marketing efforts undertaken through the Hickory Farms website.

5.     A top priority for this year is ensuring the Hickory Farms website is accessible to blind and visually-impaired individuals in conformance with the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0AA").   Hickory Farms is undertaking this work both to comply with the consent decree in *Gniewkowski et al v. Hickory*

*Farms*, No. 2:17-cv-000417-AJS (W.D. Pa.), and because making the Hickory Farms website more accessible to blind and visually-impaired individuals makes good business sense. It expands the Company's customer base and makes Hickory Farms a more inclusive brand.

6.        In furtherance of these efforts, in March 2018, I researched and interviewed potential consultants to identify modifications to the Hickory Farms website that would ensure compliance with WCAG 2.0 AA, train Hickory Farms staff and outside vendors, and audit Hickory Farms' continued compliance. I selected Accessible360, and solicited a bid.

7.        On April 4, 2018, I held a workshop with the Hickory Farms Web Operations team and our web development firm Lyons GC (the "Web Development Team"). An excerpt of a presentation given at the workshop is attached to this Affidavit as Exhibit 1. At the workshop, I discussed with the Web Development Team the attached timeline demonstrating when the WCAG 2.0 AA compliance activities would be scheduled relative to the rest of the web optimization activities occurring in 2018. The sequencing of website modifications is particularly important to Hickory Farms because the website is on a "code freeze" between October 15 and January 15 each year during which it is not modified. The code freeze ensures the website is continuously available during the Company's busiest and most profitable season. At all other times, modifications to the Hickory Farms website are released in multiple phases over time.

8.        Considering other web-related priorities for the year, including compliance with the General Data Protection Regulation (GDPR), the Company scheduled the WCAG 2.0 AA compliance activities to occur between April and August 2018. All modifications for 2018 must be complete before the code freeze begins on October 15, 2018.

9.        On April 25, 2018, the Company entered into an agreement with Accessible360, a firm specializing in digital accessibility. A copy of the agreement is attached to this Affidavit as

Exhibit 2. Within 21 days of the execution of the agreement, Accessible360 will perform a Live-User Audit satisfying the requirements for screen readers, visual impairments, hearing impairments and keyboard-only users established in WCAG 2.0 AA. Accessible360 will deliver to the Web Development Team a comprehensive list of all accessibility issues and detailed remediation recommendations. Additionally, a "Revised By Accessible360" badge will be posted on the Hickory Farms website to indicate to users of the site that an accessibility audit is underway.

10. Accessible 360 will provide ongoing support to the Web Development Team during the implementation of the remediation recommendations and will help establish a process for ongoing, long-term digital accessibility compliance. Specifically, Accessible360 will provide senior personnel to consult, mentor and collaborate with the Web Development Team and will further provide a 2.5 hour technical training to the Web Development Team concerning the laws and emerging trends in digital compliance, including WCAG 2.0 AA, among other topics.

11. After the modifications are complete, Accessible360 will perform a Quality Assurance Reassessment to assess compliance with WCAG 2.0 AA, including checking issues identified on the initial audit and performing site-wide spot checks.

12. I swear under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Further Affiant sayeth not.

Executed April 25, 2018

Judith Ransford

3

# Exhibit A-1



# 2018 WEB ROADMAP DISCOVERY WORKSHOP

April 4, 2018

© 2018 Hickory Farms, LLC. Proprietary & Confidential

# WHITEBOARD & PLANNING SESSION

© 2018 Hickory Farms, LLC. Proprietary & Confidential

# ROADMAP PRIORITIES



**ADDRESS COMPLIANCE ISSUES**

IMPLEMENT FUNCTIONALITY & ADJUST BUSINESS PROCESSES TO MEET REQUIREMENTS.

- Complete ADA audit & implement deliverables by settled deadline
- Implement GDPR functional requirements and business processes by May 28th deadline
- HTTPS full-site migration

# TIMELINE - CHALLENGED



# Exhibit A-2

**ACCESSIBLE360**

BETTER. FOR ALL™

## MASTER ACCESSIBILITY SERVICES AGREEMENT

**Effective Date: March 14th, 2018**

**Parties:**

| "CONSULTANT" OR A360: | "CLIENT" |
|---|---|
| Accessible360, LLC | Hickory Farms, LLC |
| 1422 W. Lake Street, Suite 314 | Address: 311 South Wacker Drive, Suite 2030 |
| Minneapolis, Minnesota 55408 | City, State: Chicago, IL 60610 |
| Email: info@Accessible360.com | Email: judy.ransford@hickoryfarms.com |
| Tele: 612.440.3601 | Tele: 312.233.2154 |
| | AP Email:judy.ransford@hickoryfarms.com |

**Background:**

- A360 is experienced in the field of website and technology accessibility assessment, and provides testing, reports, monitoring, recommendations and training regarding website and technology accessibility.
- Client wishes to engage A360 to perform accessibility review, reporting, monitoring and/or other services "Services" as described in and subject to the terms of this Master Accessibility Services Agreement and one or more Statements of Work as mutually agreed by the parties collectively the "Agreement").

**Agreement:**

A360 and Client hereby enter into this Agreement as of the Effective Date written above and agree as follows:

1. **Consulting Services and Fees:**

    1.1. Accessibility Testing / Reporting / Monitoring Services as Described in SOW. A360 will perform for CLIENT the services described on each Statement of Work or Work Order (collectively a "SOW") entered into and signed by the parties, and each SOW is subject to the terms of this Master Accessibility Services Agreement, except that in the event of a direct conflict between the terms of this Master Accessibility Services Agreement and any SOW, the terms of the SOW shall prevail as to such SOW.

    1.2. **Fees, Expenses and Invoicing.** CLIENT will pay A360 the project fee or hourly rates identified on each SOW for the Services performed by A360 under such SOW. CLIENT will reimburse A360 for its reasonable and approved expenses in performing Services under this Agreement. A360 will invoice CLIENT and all invoices are due 30 days following receipt of the invoice unless a different method is described in a SOW. In the event CLIENT fails to pay an invoice when due, A360 is entitled, in addition to payment in full, all collection costs including reasonable attorney and court fees.



2.    **Rights in Deliverables and Data; A360 Report Templates.**

    2.1.   <u>Reports, Deliverables and A360 Report-Templates.</u>  CLIENT understands and agrees that A360 has developed its report-templates, testing templates, methodologies, dashboards, strategies, subject matter expertise, audit documents, report and recommendations documents, remediation recommendations, and similar items and tools (collectively, "A360 Report-Templates") at substantial effort and expense prior to entering into this Agreement with CLIENT, and the existence of the A360 Report-Templates permits A360 to perform services for CLIENT more efficiently and cost-effectively, and are used for multiple A360 clients.    The parties agree that the A360 Report-Templates are confidential, proprietary and trade secret information and the property of A360.

        2.1.1.   CLIENT may Use Provided Items for Internal Purposes. For all A360 Report-Templates and other reports or information that A360 in-fact provides to CLIENT, A360 grants CLIENT (including its affiliates and successors, and if specified in a SOW the direct clients of CLIENT) a right to use, copy and distribute the A360 Report-Templates and other reports or information that have been provided to CLIENT as part of the Services for CLIENT'S internal use for the purpose of improving the accessibility of its website and / or other technology, but not for the benefit of any third party.  A360, however, retains ownership of all rights, including all intellectual property rights including copyright and trade secret rights, in and to the A360 Report-Templates. CLIENT may not remove or alter any copyright, confidentiality or other proprietary notice appearing on an A360 Report-Template.

        2.1.2.   <u>**Limit of Sharing A360 Report-Templates with Third Parties (Such as Web Developers).**</u>    CLIENT may not use or permit others to use the A360 Report-Templates to provide services or items competitive to those provided by A360.  If CLIENT wishes to share any A360 Report-Template (such as an audit report or a recommended remediation report) with a third party (for example, CLIENT's e-commerce platform service or a website development / remediation service) such third party is subject to the prior review and written approval of A360, not to be unreasonably withheld (and A360 will not approve any competitor of A360). CLIENT shall take all appropriate measures to ensure that any third party receiving any A360 Report-Template uses such A360 Report-Templates exclusively for the benefit of CLIENT and only as permitted in this Agreement.  CLIENT is responsible for any improper act or omission by third parties selected by CLIENT to receive access to any A360 Report-Template.

3.    <u>**Confidentiality, Publicity and Non-Solicitation.**</u>

    3.1.   Regarding information disclosed by a party ("Disclosing Party") to the other party ("Receiving Party") identified by the Disclosing Party as "confidential" or "proprietary" or that under the circumstances ought reasonably to be treated as confidential or proprietary (collectively, "Confidential Information"), the Receiving Party shall not,



without the prior written consent of the Disclosing Party: (i) disclose such Confidential Information to any third person or entity other than in the proper course of performance under this Agreement, nor (ii) use such Confidential Information for any purpose other than performance or receipt of performance hereunder, nor (iii) use such Confidential Information in any manner that would be adverse to the interests of the Disclosing Party. The A360 Report-Templates are the Confidential Information of A360. The terms of this Agreement are also confidential. The confidentiality obligations of this Section 3.1 do not apply to any information or development that the Receiving Party can demonstrate: (i) is or subsequently becomes available to the general public other than through a breach by the Receiving Party; (ii) is already known to the Receiving Party before disclosure by the Disclosing Party; (iii) is developed through the independent efforts of the Receiving Party without reference to the Disclosing Party's Confidential Information; or (iv) the Receiving Party receives rightfully from third parties that are not subject to any restriction as to use or disclosure of the information.

3.2.   Upon termination or expiration of this Agreement, CLIENT and A360 will return or destroy all Confidential Information obtained from the other party and all copies of the Confidential Information.

3.3.   **No Solicitation.**   During the term of this Agreement and for a period of one year after the termination or expiration of this Agreement, neither CLIENT nor A360 may directly solicit for employment or otherwise engage any employee or personnel of the other who is or was directly involved in the performance of this Agreement, unless the parties mutually agree otherwise in writing.

4.   **Warranty, etc.**   A360, which is performing digital accessibility auditing services, warrants that the Services performed will be performed and A360 Report-Templates provided in a professional and diligent manner that meets industry standards as explicitly outlined in individual SOW(s). This warranty is applicable to the Services and A360 Report-Templates at the time delivered. In the event of a breach of the foregoing warranty, CLIENT will give prompt written notice to A360, and as A360 will correct or cure the applicable Services or A360 Report-Templates at no additional cost to CLIENT, or if the foregoing is not feasible then A360 will, as its exclusive liability, return to CLIENT all fees paid for the defective Services or A360 Report-Templates. THE WARRANTY ABOVE IS EXCLUSIVE AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE WITH RESPECT TO THE SERVICES OR A360 REPORT-TEMPLATES PROVIDED UNDER THIS AGREEMENT, AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. No Legal Advice. A360 does not provide legal advice, and no Services or A360 Report-Templates provided by A360 shall be considered to be legal advice. A360 is not responsible for any claim or allegation a third party may make regarding CLIENT'S website or other technology.   For legal conclusions or advice A360 recommends CLIENT seek advice from qualified legal counsel.

5.   **Limitation of Liability - Mutual.** IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, OR PUNITIVE DAMAGES (INCLUDING BUT NOT LIMITED TO LOST PROFITS),



REGARDLESS OF WHETHER SUCH LIABILITY IS BASED ON BREACH OF CONTRACT, TORT, STRICT LIABILITY, BREACH OF WARRANTIES, FAILURE OF ESSENTIAL PURPOSE OR OTHERWISE AND EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHER, A PARTY'S MAXIMUM AGGREGATE LIABILITY FOR ANY AND ALL CLAIMS ARISING UNDER OR RELATED TO THIS AGREEMENT SHALL NOT EXCEED THE TOTAL OF SUMS PAID (OR OWING BUT UNPAID) UNDER THE SOW TO WHICH THE CLAIM RELATES.

6.   **Term and Termination.**

   6.1.   The term ("Term") of this Agreement shall be twelve (12) months from the Effective Date. Thereafter, this Agreement shall automatically renew for additional terms of 12 months each so long as any SOW under this Agreement remains in effect.

   6.2.   Either party may terminate this Agreement or any SOW upon thirty (30) days prior written notice to the other party.

   6.3.   Either party may terminate this Agreement or any SOW: (i) if the other party is in material breach or default of any obligation hereunder, which breach or default is not cured within fifteen (15) days of written notice from the other party; (ii) if the other party becomes insolvent, upon  five (5 days written notice from the other party; or (iii) if the other party files as a debtor  under any bankruptcy, insolvency or liquidation law, whether domestic or foreign, or such a filing is made against such party and such involuntary filing is not dismissed within sixty (60) days of commencement thereof.

   6.4.   The terms of Sections 1.2, 2, 3, 4, 5, 6 and 7, including all subparts, shall survive the termination or expiration of this Agreement.

   6.5.   Upon termination or expiration of this Agreement or of any SOW, CLIENT shall pay A360 for all Services and A360 Report-Templates provided prior to the date of termination, along with all expenses accrued through the date of termination or expiration under each applicable SOW.

7.   **Miscellaneous.**

   7.1.   **Applicable Law; Venue.**  This Agreement as well as any and all claims or disputes between the parties shall be governed by the laws of the State of Minnesota. Any action arising in connection with or related to this Agreement will be brought in the federal or state courts located within Hennepin County, Minnesota, and the parties consent to the jurisdiction and appropriate venue of such courts.

   7.2.   **Entire Agreement**.  This Agreement and any SOWs constitutes the entire agreement between A360 and CLIENT regarding its subject matter. The terms on any purchase order, confirmation, or other form submitted by a party to the other party shall not apply to this Agreement and are rejected. Neither this Agreement, nor any SOW or WO may be modified except by a written agreement signed by both parties.



**7.3.** **Independent Contractor; Use of Name**. A360 shall act at all times as an independent contractor, and shall be responsible for any and all social security, unemployment, Workers' Compensation and other withholding taxes for any and all of its employees. Neither CLIENT nor A360 will use the trademark(s), trade name(s) or service mark(s) (whether registered or not) of the other party without the express prior written consent of the other party, except that each party may include the name of the other party on its list of vendors / customers.

**7.4.** **Signatures.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signature pages may be exchanged by letter/hard-copy, photocopy, email/pdf scan, fax, or similar technology, all of which shall be deemed valid and binding upon a party. Signatures may be by hand (a "wet" signature) or by any electronic or digital method, all of which shall be deemed binding upon a party.

IN WITNESS WHEREOF the parties have executed this Master Agreement.

**ACCESSIBLE360, LLC**                    **HICKORY FARMS, LLC**

_____          _Judith Ransford_____
Signature                                        Signature

_____          _Judith Ransford_____
Name                                             Name

_____          _CMO_____
Title                                              Title

_____          _4/26/18_____
Date                                             Date



# Digital Accessibility Audit & Support
# Statement of Work
## Hickory Farms, LLC

**Provided by Accessible360**
**March 14th, 2018**

# Overview

Accessible360, LLC (A360) is providing this proposal to **Hickory Farms** in order to help you assess, develop/remediate and report on digital accessibility in an effort to conform to WCAG 2.0, Level AA guidelines. This effort will be led by experienced live accessibility auditors and consultants. This document outlines the steps required to create a full and successful experience for all.

A360 is in a unique position to help **Hickory Farms** through this process by:

1. Providing **experienced, live web developers** to audit sites and apps, rather than automated tools which can include many false positives while still not highlighting usability issues*
2. Not only reporting accessibility issues, but also providing **practical, developer-focused remediation suggestions,** thus saving development time
3. Providing **priorities and estimated level of complexity**, allowing you to easily determine an implementation plan
4. Providing senior-level staff to help **plan, facilitate and consult throughout** the implementation, keeping the process as smooth and efficient as possible

*The U.S. Government, General Services Administration, states that:
*"Automated testing and evaluation tools are not sophisticated enough to tell you, on their own, if your site is accessible, or even compliant."* www.section508.gov/content/automated-evaluation-tools

# Process

The A360 Roadmap is a simple process to get your organization as digitally accessible as possible, as quickly as possible, while working with your specific needs, development processes and available resources.

Accessible360 will provide a live audit of your site  and then support your remediation and ongoing development process.  This support includes help desk support, training, policy/process support, live-user monitoring, Letters of Conformance, expert rebuttal reports and more.



## Step 1: Live-User Audit

A360 will conduct a live, disabled-user audit of the **www.hickoryfarms.com** site for the pages outlined in Exhibit 1 - Site Scope. This accessibility audit satisfies requirements for screen readers, visual impairment, hearing impaired and keyboard-only users using standards established in WCAG 2.0 Level AA (https://www.w3.org/WAI/WCAG20/quickref/).



**At this step A360 will provide the following assistance and deliverables:**
- **Audit Issue Report**
  - MS Excel document containing a comprehensive list of findings including:
    - Site-wide accessibility issues
    - URL of each page audited
    - Specific instance(s) on the page violating a guideline
    - Associated accessibility WCAG guideline or rule
    - User audience affected by the issue (e.g., screen reader, keyboard-only, hearing impaired, color contrast)
    - A detailed recommendation to remediate each noted issue
    - Priority for fixing the issue
    - See Exhibit 2 for sample
- **Audit Summary Report**
  - Written document that summarizes the audit and highlights common issues that were found, along with recommended next steps for the Client
  - Related site-wide issues and fixes that may improve ongoing maintenance, Search Engine Optimization, overall usability and more
  - Screenshots where needed to illustrate the problem areas
- **"Reviewed By Accessible360" Badge**
  - Client can use the A360 badge to indicate to users of the site and other entities that an accessibility audit is underway
  - Badge can be placed anywhere on the site, including home page, footer or accessibility statement page
  - See Exhibit 3 - A360 Reviewed By Badges



# Step 2: Ongoing Digital Accessibility Support

During this phase, A360 will partner with **Hickory Farms** to provide digital accessibility support in order to both remediate existing digital properties and help establish processes for ongoing, long-term digital accessibility compliance.

## Remediation Support

Following the A360 audit, **Hickory Farms** will schedule and perform internal remediation for **www.hickoryfarms.com** based on results from the Live-User Site Audit. A360 will support this development effort through as-needed technical support for internal technical teams and/or external vendors of **Hickory Farms.**



**A360 will provide the following assistance and deliverables during the ongoing support period:**

- **A360 Help Desk:** Senior A360 technicians to consult, mentor and collaborate with client's internal team and/or external vendors on the following:
  - call/email/slack technical questions via A360 Help Desk
  - pairing with an auditor
  - sample code
  - proactive review/QA of new pages and other content
  - other related activities determined valuable to the success of our engagement
- **Technical Training:** A 2 ½ hour remote technical training for **Hickory Farms'** developers, designers and other related staff. The technical training will consist of:
  - Overview of the laws and emerging trends in this new digital compliance topic for development organizations and the business, including intro to WCAG 2.0 AA
  - Technical Accessibility Training with coverage of the most common techniques and best practices to deliver accessible content, including examples based on the current site
  - Additional resources to continue to expand your knowledge of digital accessibility

**Note on Expediting Remediation:** Because site content and design are continually evolving, A360 strongly encourages our clients to remediate the site as soon as possible after the accessibility audit in order for it to be as applicable as possible.

## Quality Assurance Reassessment

Once the client has completed the remediation development effort, A360 will re-assess the **www.hickoryfarms.com** site. QA includes both checking the issues found in the initial audit and doing a site-wide spot check to ensure that problems encountered on individual pages are fixed globally across the site. This testing is typically done in a staging environment.

**At this step, A360 will provide the following assistance and deliverables:**

- **QA Testing:** A360 will provide up to two (2) rounds of live-user Accessibility Quality Assurance testing to confirm that the fixes have successfully been applied and the site is usable by affected audiences.
- **Updated Audit Issue Report:** Updated Accessibility Audit Report contains any additional fixes and existing issues that are still not complete.
- **Letter of Accessibility Conformance:** Stating that as of the reviewed date on the specified server, A360 found the site substantially conforms with Level A and Level AA of the Web Content Accessibility Guidelines (WCAG) version 2.0.

**Note on Letter of Conformance:** A360 uses a 1-3 scale for level of priority for each issue. Level 1 indicates a complete blocker for one or more audiences, and Level 3 indicates a WCAG issue that does not significantly impact the ability to use the site. In order to receive a Letter of Conformance and/or Reviewed By Badge from A360, all Priority 1 and Priority 2 issues must be



satisfactorily resolved globally across the site and a written plan for Priority 3 items must be in place.

## Live-User Monitoring

A360 will provide quarterly live-user monitoring of up to ten (10) in-scope URLs following a successful QA for the site. Monitored pages shall consistent of primary user flows within the site and will be specified following QA.

**At this step A360 will provide the following assistance and deliverables:**
- **Accessibility Site Monitoring:** Live-user quarterly site assessments.
- **Accessibility Report** identifying new issues that have been introduced.

## Compliance Support

In addition to ongoing support and live-user monitoring, A360 will help **Hickory Farms** stay accessible and help mitigate risk through additional compliance support including:

- **Expert Rebuttal Report:** Our disabled auditors can provide an expert rebuttal of accessibility claims against your site if needed during the monitoring time frame.
- **Updated Letter of Conformance** provided the site continues to be in good standing with no Priority 1 or 2 issues.
- **Reviewed By A360 Badge** indicates ongoing digital accessibility support & monitoring.
  - Client can use the A360 badge to indicate to users of the site that an accessible user experience continues to be important to **Hickory Farms**
  - Badge can be placed anywhere on the site, including on home page, footer or accessibility statement page provided
  - A360 will provide Badging as long as **Hickory Farms** continues to subscribe to our support and monitoring service and is in good standing
  - See Exhibit 3 - A360 Reviewed By Badges

# Proposed Timeline

A360 will begin the services **within three weeks** of receiving signed Master Services Agreement (MSA), this signed Scope of Work (SOW) and payment for the first invoice. Dates are subject to change based on project changes and delivery of executed documents. These dates are based on all documents and initial payments executed by **April 30th, 2018.**

| Process Step | Proposed Completion Date |
| --- | --- |
| Step 1: Live-User Accessibility Audit | **May 23rd, 2018** |
| Step 2: Ongoing Digital Accessibility Support | **May 30th, 2018** |



# Pricing

The total fee for these services is outlined below:

| Item | Fee |
|---|---|
| **Accessibility Audit** (www.hickoryfarms.com)<br>• Live Disabled User Audit for screen readers, visual impairment, hearing impairment and keyboard-only users<br>• Comprehensive Audit Reports<br>• A360 "Reviewed By" badging | **$6,900** |
| **Quality Assurance Testing & Ongoing Support** (www.hickoryfarms.com)<br>• Ongoing technical "A360 Help Desk" support and other accessibility consulting<br>• Quality Assurance testing by live auditors<br>• Technical Training<br>• Comprehensive quarterly monitoring<br>• Updated Letter(s) of Conformance<br>• Expert Rebuttal Report(s) if required by legal<br>• A360 "Reviewed By" badging | **$2,950/quarter** |

Upon acceptance, which is indicated by signing this SOW, Accessible360 requires the audit fee of **$6,900** paid on or before the services start date.

Accessible360 requires the first quarterly fee for Ongoing Support of **$2,950,** to be paid on or before the start date of **May 30th, 2018.** Each subsequent quarter will be invoiced to the Client under NET FIFTEEN DAY (N15) terms. Client is agreeing to A360's services for a period of 24 months (8 quarters) starting **May 30th, 2018.**

A360 may, as a courtesy, begin or continue work prior to receipt of any payment that is due; beginning or continuing work does not waive any rights. A360 may, in addition to its other rights and remedies, suspend services if payments are not received when due.

# Assumptions

This estimate will be based on the mutually agreed upon calendar and deliverables within this SOW. If the SOW or schedule changes, additional costs may be incurred and a new estimate may be generated.

**This SOW is subject to the following assumptions:**



- Third-party content and services will not be audited unless specified in Exhibit 1 - Scope. This includes iframes, external links, pop-ups, and other references. When appropriate, A360 will list any third-party content found in the audit report.
- Hickory Farms' blog and chat functionality will not be included.
- Hickory Farms' desktop and mobile websites share a codebase (Responsive). As such, the desktop will be audited and both the desktop and mobile layouts will be tested during QA.
- Hickory Farms will be responsible for providing A360 with any test data required for an audit and QA prior to beginning work. This could include user credentials, dummy credit cards, transaction history and other data.
- Remediation and other development support services beyond the hours included in this SOW will be billed on a time and materials basis at $175/hour. In the event that a client contacts A360 and has no more allotted time, A360 will notify the client that this interaction will be billed and ask the contact whether they would like to continue.
- Total hours of work performed by A360 during the audit is not to exceed 48 hours. Total hours of work performed by A360 during the entire support contract is not to exceed 158 total hours. In order to assure that support hours are available throughout the engagement, client may not use any more than half of their remaining support hours in any three month period. During the support contract period, client may use hours for other digital accessibility review work, if desired and if hours are available.

**All of the following are out-of-scope services:**
- All services not explicitly defined in this proposal.
- Travel, lodging and per diem costs affiliated with this project.
- Any out-of-pocket costs associated with the effort (e.g. printing, binding, displays, etc.).
- Review of any digital marketing materials such as email, etc.
- A360 is not a law firm and does not provide legal advice. A360 encourages Client to work with experienced legal counsel to understand and apply the law to Client's situation.
- A360's reports and recommendations reflect A360s experience and understanding in the field of accessible technology. Client is responsible for the operation of its own business, and Client is always free to adopt A360's recommendations, in whole, in part, or not at all, as Client sees fit in its legal and business judgement.

# Agreement

This document is a Scope of Work ("SOW") for Services to be performed herein and in accordance with the Master Service Agreement between **Hickory Farms, LLC** ("Client") and Accessible360, LLC ("A360"). In the event this document is not executed by April 30th, 2018, the pricing and other information in this SOW is no longer valid.

**Hickory Farms, LLC** has engaged A360 to provide Website Accessibility services ("Project") starting April 30th, 2018.



Accessible360 can provide separate estimates if any additional services are desired. Although Accessible360 will provide estimates in good faith, all invoices and fees are based upon time actually spent performing Services.

This SOW is as of the above date; Client-signed authorization is considered permission to initiate Services listed above.

**Accessible360, LLC**

_____
Signature

_____
Name

_____
Title

_____
Date

**Hickory Farms, LLC**

_Judith Ransford_
Signature

_Judith Ransford_
Name

_CMO_
Title

_4/26/18_
Date

# Exhibit 1 - Scope

*The following representative sample of pages will be audited for this engagement*

| Page Name | URL |
|---|---|
| Hickory Farms: Gift Baskets & Specialty Gourmet Products | http://www.hickoryfarms.com/ |
| Hickory Farms \| About Us | http://www.hickoryfarms.com/about-us.html |
| Corporate, Client & Employee Recognition Gifts \| Hickory Farms | http://www.hickoryfarms.com/corporate-gifts/ |
| Fruit Gift Baskets \| Hickory Farms | http://www.hickoryfarms.com/fruit-baskets/ |
| Fruit Gift Baskets \| Hickory Farms | http://www.hickoryfarms.com/fruit-baskets/?pmax=40&pmin=30 |
| Hickory Farms Crown Comice Pear Gift Box \| Hickory Farms | http://www.hickoryfarms.com/fruit-baskets/hickory-farms-crown-comice-pear-gift-box-022001.html |
| Hickory Farms Fruitful Gift Box \| Hickory Farms | http://www.hickoryfarms.com/fruit-baskets/hickory-farms-fruitful-gift-box-022002.html |
| Locate a Store \| Find a Hickory Farms Store | http://www.hickoryfarms.com/locations |
| No Kid Hungry | http://www.hickoryfarms.com/no-kid-hungry/ |
| Hickory Farms \| Privacy Policy | http://www.hickoryfarms.com/privacy-security/privacy-policy.html |
| Hickory Farms \| Security Information | http://www.hickoryfarms.com/privacy-security/security-information.html |
| Hickory Farms \| Terms of Use Information | http://www.hickoryfarms.com/security-cust-serv/terms-of-use-information.html |
| Sites-HickoryFarms-Site | https://www.hickoryfarms.com/cart |
| Checkout | https://www.hickoryfarms.com/checkout |
| Customer Service | https://www.hickoryfarms.com/customer-service.html?source=customer-service |
| Hickory Farms \| Sales Tax Information | https://www.hickoryfarms.com/placing-your-order/sales-tax.html?source=customer-service |
| Shipping | https://www.hickoryfarms.com/shipping |

# Exhibit 2 - Accessibility Audit Report

*Sample audit items and remediation information*



| Website Page/Template # | Link to webpage | Text that identifies what item on page | Description of item/issue | Affected Users | Priority | Narrative | WCAG Guideline | Recommended Fix |
|---|---|---|---|---|---|---|---|---|
| Sitewide | | Main content heading | There's no heading at the beginning of the main content section (coder's perspective everything wrapped in main tag) | Screen Reader | 2 | Headings | 1.3.1, 2.4.1 | Add a heading at the top of the main content that can contain the title of the page for screen readers (should be invisible for non screen readers) |
| Sitewide | | Product images with text | There is text within the image | Screen Reader & Magnification | 2 | Images | 1.4.3 | Move text outside the images |
| Sitewide | | Sitewide issue of Tab Function | Lack of focus indicator for keyboard user | Keyboard | 1 | Focus | 2.4.7 | Should always be visible, and have sufficient contrast . |
| Sitewide | | Color Contrast | The visual presentation of text and images of text are required to reach established contrast ratios | Color blind or other visually impaired user | 1 | Color Contrast | 1.4.3 | Add JavaScript tools and buttons to change both to high contrast mode and large font mode. |
| Homepage | | Shopping Cart | Shopping Cart is not labeled for Screen Readers | Screen Reader | 1 | Images | 2.4.4 | Hide the Shopping Bag 50 from Screenreader Users: Add a Link to Shopping Bag with Alt Text |
| Homepage | | Search Field | Search Field has incorrect labels or Alt Text | Screen Reader | 3 | markup | 4.1.2 | Should be Type = Search not Type = Text |
| Template 1 | | News & Trends | Each category under News & Trends is marked as a list | Screen Reader | 3 | Markup | 1.3.1 | Remove the lists here or make the lists not apparent to screen readers. |
| Template 5 - Mens Jackets | | Men's Jacket Images | Image description does not contain all of the text of the image | Screen Reader | 1 | Images | 1.1.1 | Add Alt Attribute to describe image. |
| Template 5 - Mens Jacket Silhouettes | | List on Left hand side of page | All of the categories on the left side are individual lists | Screen Reader | 2 | Markup | 1.3.1 | Identify this as a list and then items within the list |

# Exhibit 3 - A360 Reviewed By Badges

  

The Reviewed By Accessible360 badge may be used on an Accessibility Statement page, the footer of your site or other locations as required.

**Usage Guidelines:**

- The image should link back to http://accessible360.com
- The image should have an alt attribute of "Reviewed By Accessible360"
- The aspect ratio of the image should be retained (no stretching to fit)
- The badge may only be used on the site(s) indicated in this Statement of Work, and only after the required documents are executed and customer continues in good standing
- The badge can be displayed on your site for up to 120 days after delivery of your audit results if client continues to subscribe to our support and monitoring service and is in good standing



# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Rachel Gniewkowski, et al,

No. 2:17-cv-00417-AJS

Plaintiffs,

LEAD CASE

vs.

Hickory Farms, LLC

Defendant.

### CONSENT DECREE

1.      This Consent Decree is entered into as of the Effective Date, as defined below in Paragraph 10, by and between the following parties: Plaintiffs, Access Now, Inc., R. David New, and Rachel Gniewkowski (collectively "Access Parties"), and Defendant, Hickory Farms, LLC, ("Hickory Farms").

### RECITALS

2.      Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181- 12 I 89 ("ADA") and its implementing regulation, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S. C. § 12182(a); 28 C.F.R. § 36.20 I(a).

3.      On or about January 5, 2017, certain of the Access Parties sent a pre-litigation letter to Hickory Farms, asserting that Hickory Farms' website had substantial access barriers, in violation of the ADA.

4.      On April 1, 2017, the Access Parties filed this lawsuit against Defendant. The Access Parties alleged that Defendant's website, www.hickoryfarms.com, (the "Website"), contains barriers that prevent full and equal use by persons with a visual impairment, in violation of Title III of the ADA, 42 U.S.C. §§12181- 12 189.

5.      Defendant denies the Website violates Title III of the ADA or any other statute or regulation. By entry into this Consent Decree, Defendant does not admit or concede any wrongdoing.

6.      This Consent Decree resolves, settles, and compromises all issues between the Parties based on the allegations set forth in this lawsuit.

4110306 .1

## JURISDICTION

7.     Plaintiff claims that Defendant's Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C § 12181(7). Defendant denies that its Website is a public accommodation or a place of public accommodation or is otherwise subject to Title III of the ADA.

8.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12188. The Parties agree venue is appropriate.

## AGREED RESOLUTION

9.     The Parties agree that it is in their best interest to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in Plaintiff's Complaint.

In resolution of this action, the parties hereby **AGREE** and the Court expressly **APPROVES, ENTERS, AND ORDERS** the following:

## DEFINITIONS

10.     Effective Date means the date on which this Consent Decree is entered on the Court's Docket Sheet following approval by the Court.

11.     Visual impairment means any physical, mental, or sensory impairment that substantially limits a person in the major life activity of seeing.

## TERM

12.     The term of this Consent Decree shall commence as of the Effective Date and remain in effect for the earlier of: (a) twenty-seven (27) months from the Effective Date; or (b) the date the regulations are adopted in the Department of Justice's anticipated but yet-to-be adopted regulations for websites under Title III of the ADA.

## COMPLIANCE WITH TITLE III OF THE ADA

13.     Defendant shall engage an experienced accessibility consultant to assess the Website and to provide Defendant with specific recommendations to facilitate website accessibility and conformance with Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0 AA").

14.     Defendant shall ensure full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through its Website according to the following timeline and requirements provided that the following dates will be extended in the instance that the Department of Justice releases regulations for websites under Title III of the

4110306 .1

ADA while this Consent Decree is in effect and which contain compliance dates and/or deadlines further in the future. No later than 27 months after the Effective Date of this Consent Decree, Defendant shall make reasonable efforts to comply with the recommendations of its consultant to ensure that the Website is accessible to individuals with Visual Impairment, including conformity with WCAG 2.0 AA or the applicable standard adopted by the Department of Justice.

15.     The Parties acknowledge that Defendant is unable to perform any upgrades or modifications to its Website between the period from October 15-January 15 ("Code Freeze") in any given year.

16.     Any notice or communication required or permitted to be given to the Parties hereunder shall be given in writing by e-mail and by overnight express mail or United States first class mail, addressed as follows:

To Plaintiffs:

Benjamin J. Sweet, Esquire
Carlson Lynch Sweet Kilpela & Carpenter, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
412-322-9243(phone)
412-231-0246 (fax)
ktucker@carlsonlynch.com

To Defendants:

Lynn Vuketich Luther. Esq.
Eastman & Smith, Ltd.
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, OH 43699-0032
Telephone: (419) 241-6000
Fax: (419) 247-1777
LVLuther@eastmansmith.com

## MODIFICATION

17.     No modification of this Consent Decree shall be effective unless in writing and signed by authorized representatives of all Parties.

## ENFORCEMENT AND OTHER PROVISIONS

18.     The interpretation and enforcement of this Consent Decree shall be governed by the laws of the Commonwealth of Pennsylvania.

4110306 .1

19.    Plaintiffs and Defendant have settled all matters relating to costs, damages, attorneys' fees, experts' fees, and other financial matters sought in Plaintiffs' complaint through a separate, confidential agreement (the " Letter Agreement'") hereby incorporated by reference into this Consent Decree. This Consent Decree and the Letter Agreement comprise the entire agreement of the Parties concerning the allegations set forth in Plaintiff's Complaint and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree shall be enforceable.

20.    In the event Plaintiffs allege that Defendant failed to meet its obligations pursuant to paragraphs 13 or 14 of the Consent Decree or Defendant alleges that there is an element of WCAG 2.0 AA with which it cannot substantially comply, the party making such claim will notify the other party in writing with reasonable detail of the condition at issue. Within 30 days of receipt of written notice, the party receiving notice will provide a written response. The parties will make a good faith effort to resolve the dispute informally. If the issue remains unresolved 60 days after the notice is given, the parties will mutually select an independent accessibility consultant with experience in accessible website design to evaluate whether a breach of the Consent Decree has occurred as defined in Paragraph 21 herein.

21.    There will be no breach of this Consent Decree unless (a) the independent accessibility consultant determines that the Website is not accessible by a person with a Visual Impairment who has average screen reader competency [1] using a prominent commercially available screen reader including but not limited to Jaws, Voiceover, or NVDA in combination with one of the following browsers (in versions of which are currently supported by their publishers): Internet Explorer, Firefox, Safari and Chrome; and (b) Defendant fails to remedy the issue within a reasonable period of time of not more than sixty (60) days after receiving the independent accessibility consultant's opinion. If the independent accessibility consultant estimates it will take longer than sixty days to make the necessary changes, the amount of time estimated by the independent accessibility consultant will control.    If the independent accessibility consultant finds that the inability to use a screen reader cannot be remedied using reasonable efforts, Defendants shall not be obligated to remedy the item.

22.    If any provision of this Consent Decree is determined to be invalid, unenforceable or otherwise contrary to applicable law, such provision shall be deemed restated to reflect, as nearly as possible and to the fullest extent permitted by applicable law its original intent and shall not in any event affect any other provisions all of which shall remain valid and enforceable to the fullest extent permitted by applicable law.

23.    The signatories represent that they have the authority to bind the respective parties,

---

[1] The phrase "person with a Visual Impairment who has average screen reader competency" is intended to refer to the general body of persons with Visual Impairments who use screen readers for effective communication with the Internet and various websites. The term is not intended to narrowly identify someone with a particular level of competency but instead is intended to be inclusive, while ruling out "outliers" in terms of screen reading software use proficiency. Therefore, the phrase "person with a Visual Impairment who has average screen reader competency" is intended to exclude the person who has just recently started using a screen reader and has very little experience and competence using it and at the other extreme to also exclude a blind, tech savvy person with substantial experience using a screen reader while including most users in between.

Access Now, Inc., R. David New, Rachel Gniewkowski, and Hickory Farms, LLC to this Consent Decree.

## CONSENT DECREE HAS BEEN READ

24. The Consent Decree has been carefully read by each of the Parties, and its contents are known and understood by each of the Parties. This Consent Decree is signed freely by each party executing it. The Parties each had an opportunity to consult with their counsel prior to executing the Consent Decree.

Agreed and Consented to:

_____
R. David New, Individually

$822.17$
Date

_____
Rachel Gniewkowski, Individually

$8-23-2017$
Date

ACCESS NOW, INC.

By_____

Its_____

$822.17$
Date

HICKORY FARMS, LLC

By_____

Its _CFO_____

$8/24/17$
Date

DONE AND ORDERED this 29th day of ___AUG.___, 2017

_____
Honorable Arthur J. Schwab

4110306 1

# Exhibit C

PACER Search Results

https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf

| caseTitle | caseNumberFull | dateFiled | dateTermed | natureOfSuit | caseLink |
|---|---|---|---|---|---|
| Rebecca Castillo v. Catherine Stores Corporation et al | 2:2017cv01226 | 2/15/2017 | 5/24/2017 | 446 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?670433 |
| Rebecca Castillo v. Beverages and More Inc et al | 2:2017cv01228 | 2/15/2017 | 9/26/2017 | 446 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?670447 |
| Rebecca Castillo v. Sees Candies, Inc. et al | 2:2017cv04413 | 6/14/2017 | 6/16/2017 | 446 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?681119 |
| Rebecca Castillo v. Dicks Sporting Goods, Inc. et al | 2:2017cv05576 | 7/27/2017 | 3/8/2018 | 446 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?685009 |
| Rebecca Castillo v. Marriott International, Inc. et al | 2:2017cv06625 | 9/8/2017 | 10/3/2017 | 446 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?688503 |
| Rebecca Castillo v. Ben Bridge-Jeweler, Inc. et al | 2:2017cv08134 | 11/7/2017 | 2/23/2018 | 440 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?693697 |
| Rebecca Castillo v. Heritage Home Group, LLC | 2:2018cv01491 | 2/22/2018 | 4/11/2018 | 446 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?702142 |
| Rebecca Castillo v. Nike, Inc. et al | 2:2017cv08908 | 12/11/2017 | 3/21/2018 | 440 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?696293 |
| Rebecca Castillo v. Carmax Business Services, LLC | 2:2017cv09040 | 12/15/2017 | 3/8/2018 | 446 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?696805 |
| Rebecca Castillo v. Check'n Go of California | 2:2018cv02751 | 4/4/2018 | | 440 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?706282 |
| Rebecca Castillo v. Hayden Girls, Inc. et al | 2:2018cv02774 | 4/4/2018 | | 446 | https://ecf.cacd.uscourts.gov/cgi-bin/iqquerymenu.pl?706340 |
| Castillo v. Sears, Roebuck & Co. | 1:2017cv05286 | 7/18/2017 | 9/21/2017 | 446 | https://ecf.ilnd.uscourts.gov/cgi-bin/iqquerymenu.pl?342263 |
| Castillo v. Euromarket Designs, Inc. | 1:2017cv09317 | 12/28/2017 | 1/30/2018 | 446 | https://ecf.ilnd.uscourts.gov/cgi-bin/iqquerymenu.pl?347686 |
| Castillo v. Dick Blick Holdings, Inc. | 1:2017cv09358 | 12/29/2017 | 2/27/2018 | 446 | https://ecf.ilnd.uscourts.gov/cgi-bin/iqquerymenu.pl?347724 |
| Castillo v. Hickory Farms, LLC | 1:2018cv01536 | 3/1/2018 | | 446 | https://ecf.ilnd.uscourts.gov/cgi-bin/iqquerymenu.pl?349884 |
| Castillo v. Aveda Services Inc. | 2:2017cv06009 | 10/13/2017 | | 446 | https://ecf.nyed.uscourts.gov/cgi-bin/iqquerymenu.pl?408241 |
| Castillo v. Origins Natural Resources Inc. | 2:2017cv07221 | 12/12/2017 | | 446 | https://ecf.nyed.uscourts.gov/cgi-bin/iqquerymenu.pl?410564 |
| Castillo v. Steven Madden Ltd. | 1:2018cv00119 | 1/8/2018 | | 446 | https://ecf.nyed.uscourts.gov/cgi-bin/iqquerymenu.pl?411542 |
| Castillo v. Casper Sleep, Inc. | 1:2017cv07474 | 9/29/2017 | 11/21/2017 | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?481393 |
| Castillo  v. J. Crew Group, Inc. | 1:2017cv08437 | 11/1/2017 | 12/26/2017 | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?483140 |
| Castillo  v. Foot Locker, Inc. | 1:2017cv08480 | 11/2/2017 | 2/20/2018 | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?483218 |
| Castillo  v. Eileen Fisher, Inc. | 1:2017cv08542 | 11/3/2017 | 4/2/2018 | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?483333 |
| Castillo  v. Bally Americas, Inc. | 1:2017cv09130 | 11/21/2017 | 4/16/2018 | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?484275 |
| Castillo  v. Godiva Chocolatier, Inc. | 1:2017cv09624 | 12/7/2017 | | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?485043 |
| Castillo  v. Michael Kors Retail, Inc. | 1:2017cv09748 | 12/12/2017 | 1/12/2018 | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?485269 |
| Castillo  v. Anne Fontaine, Inc. | 1:2018cv00422 | 1/17/2018 | | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?486823 |
| Castillo  v. Tory Burch, LLC | 1:2018cv00951 | 2/2/2018 | 3/27/2018 | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?487831 |
| Castillo  v. Berluti, LLC. | 1:2018cv01177 | 2/9/2018 | 3/6/2018 | 446 | https://ecf.nysd.uscourts.gov/cgi-bin/iqquerymenu.pl?488242 |
| Castillo v. Things Remembered, Inc. | 1:2017cv01846 | 9/1/2017 | 1/4/2018 | 446 | https://ecf.ohnd.uscourts.gov/cgi-bin/iqquerymenu.pl?236277 |
| Castillo v. Jo-Ann Stores, LLC | 5:2017cv02110 | 10/6/2017 | | 446 | https://ecf.ohnd.uscourts.gov/cgi-bin/iqquerymenu.pl?236982 |
| Castillo v. White Castle Management Company | 2:2017cv00841 | 9/25/2017 | 2/12/2018 | 445 | https://ecf.ohsd.uscourts.gov/cgi-bin/iqquerymenu.pl?206524 |